GEORGE W. BARTCH, PETITIONER, *v.* JOHN C. CUTTER, RESPONDENT.

6   409
8   302
24* 526
30*1093

6   409
13   89
13  230

OFFICE.—COUNTY COURT.—PROBATE JUDGE.—A county court composed of the probate judge and three selectmen has no authority under the Statutes of Utah to appoint the probate judge to an office created by the court, and called "superintendent of county affairs."

ID.—ID.—ID.—COMPENSATION.—The fees and allowances to the probate judge for work done by him having been fixed by law, he must perform those duties for the payment provided by law, and the county court has no authority to award to him an additional salary of $2,500 a year as superintendent of county affairs.

ORIGINAL PETITION for a write of mandate against John C. Cutler, clerk of the county court of Salt Lake county. The opinion states the facts.

*Mr. George W. Cumming* for the petitioner.

*Mr. Charles S. Varian,* U. S. Attorney, for the respondent.

ANDERSON, J.

This is an original proceeding in this court, in which the plaintiff prays that a writ of mandate issue herein against the defendant, as clerk of the county court of Salt Lake county, requiring him to issue the plaintiff a warrant on the treasurer of said county for $208.33 as salary alleged to be due plaintiff for services rendered in the month of December, 1889, as "superintendent of county affairs." The plaintiff alleges in his petition that he is, and since October 23, 1889, has been, the legal and acting probate judge of Salt Lake county, and, as such probate judge, a member of the county court of said county; that on the 19th day of November, 1889, by resolution of the county court, he was appointed superintendent of county affairs, and that his duties as such superintendent were and are "to have and exercise supervision and control of the public buildings of said county, and of its public roads and bridges, and work

done upon the same, the supervision, care and maintenance of paupers and insane persons, including the approval of bonds of county and precinct officers, and examinations of cases of insane persons, and to generally exercise such active supervision over the affairs of the county as is by law required by the county court aforesaid, outside the regular attendance upon the sessions of said court; all of such acts and duties being and to be subject to the order and approval of said court." It is further alleged that the plaintiff's salary as such superintendent was fixed by said court at $2,500 per annum, and that, in consideration thereof, he entered upon and has performed his duties as such superintendent from the date of his appointment up to and including the 31st day of December, 1889. It is alleged that "the labors connected with such position are arduous, and are such as are by law laid upon the county court," and that, in performing them, plaintiff has acted "merely as an employe of said court, except in the matter of examination of cases of insanity, and the approval of the bonds of county and precinct officers, and that it is impracticable, owing to the nature of the duties to be performed, to have more than one member of the county court designated to perform said labor." Plaintiff presented to the county court a bill, itemized and verified, for his salary as superintendent for the month of December, 1889, for $208.33, which was allowed, and defendant, as clerk of the county court, was ordered to draw a warrant in favor of plaintiff for that amount upon the county treasurer, which the defendant refused to do; and plaintiff prays that a writ of mandate issue out of this court against the defendant, requiring him to issue said warrant. The defendant having been served with notice of the application for the writ, appeared and demurred to plaintiff's petition on the ground that it did not state facts sufficient to constitute a cause of action.

1 Comp. Laws 1888, Sec. 178, provides that "each county shall have a county court, consisting of a probate judge of such county and three selectmen." Section 184 provides that "the county courts must be held at their respective county-seats on the first Monday in March, June, Septem-

ber and December in each year, and oftener if they deem it necessary." Section 187 provides that "the county courts, in their respective counties, have jurisdiction and power under such limitations and restrictions as are prescribed by law." Section 201 provides that "no member of the court must be interested, directly or indirectly, * * * in any contract made by the court or other person, in behalf of the county, for the erection of public buildings, the opening or improvement of roads, or the building of bridges, or for other purposes. Section 204 provides that "all claims against the county presented by the members of the county court for *per diem* or mileage, or other service rendered by them, must be itemized and verified as other claims, and must state that the service has been actually rendered." Section 209 provides that "the probate judge and selectmen shall each receive from their county $4 per day for each day actually employed in attending to business pertaining to the county court, together with the mileage at the rate of twenty cents per mile in going only from their residences to the county-seats at each session of the court attended by them." Section 90 fixes the fees to which the probate judge is entitled for certain specified services, and provides that he shall have, "for any other service not herein provided for, a reasonable compensation."

By the provisions of section 90 of the statute above quoted, it will be seen that for any service rendered by plaintiff as probate judge, where no fee for such service is fixed by law, he is entitled to a reasonable compensation. The claim for such compensation is to be allowed by the county court upon a bill therefor being presented, itemized and verified, showing the particular service rendered," etc. Section 196 Comp. Laws, It will further be seen that, as a member of the county court, plaintiff is entitled to "$4 per day for each day actually employed in attending to business pertaining to the county court, together with mileage." Any and all claims of plaintiff "for *per diem* or mileage, or other services rendered" by him, must be presented to the county court "itemized and verified as other claims, and must state that the service

has been actually rendered; and he is entitled to recover compensation from the county for his services in no other manner, nor in any greater or different amount, than that fixed by the statute, or allowed by the county court, for services actually rendered.

The rule is well settled that a public official is bound to perform the duties of his office for the compensation fixed by the law. 1 Dill. Mun. Corp 315; *Evans* v. *City of Trenton,* 24 N. J. Law, 764; *Territory* v. *Carson,* 16 Pac. Rep. 569; *Jones* v. *Supervisors,* 14 Wis. 518; *Fawcett* v. *Woodbury Co.,* 55 Iowa, 154, 7 N. W. Rep. 483. In *Evans* v. *City of Trenton, supra,* it is said: "This rule should be very rigidly enforced. The statutes of the legislature, and the ordinances of our municipal corporations, seldom describe with much detail and particularity the duties annexed to public offices; and it requires but little ingenuity to run nice distinctions between what duties may, and what may not be considered strictly official, and, if these distinctions are much favored by courts of justice, it may lead to great abuse." The plaintiff bases his claim in this case on the resolution of the county court appointing him superintendent of county affairs, and fixing his salary as such superintendent at $2,500 per year; and his acceptance of such appointment, and performance of the duties it imposed. But section 201, heretofore quoted, prohibits any member of such court from being interested, directly or indirectly, in any contract made by the court or other person, in behalf of the county, for any purpose. The resolution of the court appointing plaintiff superintendent of county affairs, and his acceptance of such a position, constituted a contract, and was void because prohibited by the statute. Its effect, also, if carried out, would be or might be to increase his compensation as an officer; and it was, therefore, void as against public policy, independently of the statute. *Gilman* v. *Railroad Co.,* 40 Iowa, 200, and cases cited.

It is probably true that the business of the county is such as to require attention between the regular sessions of the county court; and we think, under 1 Comp. Laws, Sec. 191, the court may appoint one or more of its mem-

bers as a committee to have supervision of such business during the interval between the sessions of the court, and to report at its regular sessions, and that such committee would be entitled to compensation for such service at a rate not exceeding four dollars per day for the time actually and necessarily employed, together with mileage. But the county court, being a court of special and limited jurisdiction and powers, cannot create an office, and appoint one of its members to fill it at a fixed salary; nor can it bind the county by a resolution or contract to pay one of its members a fixed yearly sum for performing duties which, as is alleged in this case, are devolved by law upon this court. If the labors of the court can be parceled out in this manner, and fixed and extra compensation allowed therefor, it can create an office or appointment for each of its members, and without limit as to the salary allowed, and thereby increase the compensation of its members at their pleasure.

Under the arrangement between plaintiff and the county court, he would be entitled to draw from the county treasury, as superintendent, nearly seven dollars per day for every day in the year, including Sundays and legal holidays, when he could perform none of the duties of his position. During the sessions of the county court, he would also be entitled to four dollars per day as a member of such court, and, while engaged in his duties as probate judge, he would be entitled to the fees provided by law for those duties, and yet, notwithstanding the performance of his duties as probate judge and member of the county court would, while so engaged, prevent the performance of his duties as superintendent, his salary as superintendent would continue without interruption. The alleged fact that such has been the former practice of the county court does not add strength to the plaintiff's claim. We think the court has no such power, and its exercise would lead to great abuses. The appointment of plaintiff as a so-called superintendent of county affairs, at a fixed salary, was without authority of law, and void, and created no liability against the county for salary. The application for a writ of mandate is therefore denied.

ZANE, C. J., and HENDERSON, J., concurred.

BLACKBURN, J.:

I concur in the judgment of the court, but I think when a member of the court does county business by appointment, when the court is not in session, he is entitled to a reasonable compensation for such services, and is not limited to a *per diem* allowance of four dollars.